UNITED STATES DISTRICT AND BANKRUPTCY COURTS
FOR THE DISTRICT OF COLUMBIA

**FILED**
JAN 22 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

MICHAEL CHRISTOPHER DERRICOTE
9011 LAMBSKIN LANE
COLUMBIA, MARYLAND 21045
            202-367-0858
                VS

Case: 1:15-cv-00114
Assigned To : Howell, Beryl A.
Assign. Date : 1/22/2015
Description: Pro Se Gen. Civil

*Jury Demand*

THE WASHINGTON METROPOLITAN AREA
      TRANSIT AUTHORITY
600 5th ST. N.W.
WASHINGTON, D.C. 20001
DEFENDANT

            COMPLAINT

THIS IS A CIVIL RIGHTS ACTION IN WHICH PLAINTIFF
MICHAEL C. DERRICOTE SEEKS TO REMEDY THE VIOLATION OF HIS
CIVIL RIGHTS SECURED BY TITLE VII OF THE CIVIL RIGHTS ACT
OF 1964 AS AMENDED, 42 U.S.C. § 2000e et seq; THE FAIR CREDIT
REPORTING ACT, 15 U.S.C. § 1681; AND THE DISTRICT OF COLUMBIA
HUMAN RIGHTS ACT D.C. CODE § 12-1401 et seq, AGAINST THE
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY ("WMATA")
AND ALLEGE, UPON PERSONAL KNOWLEDGE AS TO THEMSELVES
AND UPON INFORMATION AND BELIEF WITH RESPECT TO OTHER
MATTERS AS FOLLOWS:

**RECEIVED**
DEC 12 2014
Clerk, U.S. District and
Bankruptcy Courts

PRELIMINARY STATEMENT

1.) THIS LAWSUIT CALLS ON W.M.A.TA. TO ADOPT FAIR &
NON-DISCRIMINATORY BACKGROUND SCREENING POLICY.
WHILE CRIMINAL BACKGROUND INFORMATION CAN BE A
LEGITIMATE TOOL FOR EMPLOYERS WHEN SCREENING JOB
APPLICANTS, W.M.A.TAS BACKGROUND CHECK POLICY IS
OVERLY BROAD, UNJUSTIFIABLY RIGID, AND UNDULY HARSH.
IT RESULTS IN THE UNNECESSARY FIRING OF FORMER
& CURRENT EMPLOYEES WHO HAVE A DEMONSTRATED TRACK
RECORD OF SUCCESSFUL EMPLOYMENT AND THE DENIAL
OF EMPLOYMENT TO APPLICANTS WHO ARE WELL QUALIFIED
TO PERFORM THE JOBS AT ISSUE SAFELY & EFFECTIVELY
THE POLICY DISQUALIFIES MANY JOB APPLICANTS AND EMPLOYEES
BASED ON CRIMINAL HISTORY THAT IS NOT JOB RELATED OR
OCCURED SO LONG AGO - IN SOME CASES 20 OR 30 YEARS IN THE
PAST - THAT IT IS IRRELEVANT TO ANY FAIR DETERMINATION
OF EMPLOYEE HONESTY, RELIABILITY OR SAFETY. FOR EXAMPLE,
UNDER W.M.A.T.A'S POLICY, A PERSON WHO HAS EVER HAD A
FELONY CONVICTION FOR DRUG POSSESSION IS PERMANENTLY
DISQUALIFIED FROM EMPLOYMENT IN A WIDE RANGE OF JOBS,
INCLUDING BUS OPERATOR AND CUSTODIAN, EVEN IF THE
APPLICANT HAS BEEN DRUG FREE AND HELD A STEADY JOB
FOR TEN OR 20 YEARS

2.). W.M.A.T.A'S POLICY IS FAR MORE RESTRICTIVE THAN NECESSARY TO PROTECT PUBLIC SAFETY. THE FEDERAL TRANSPORTATION SECURITY ADMINISTRATION, WHICH HIRES INDIVIDUALS TO SCREEN PASSENGERS AT AIRPORT CHECKPOINTS USES BACKGROUND SCREENING STANDARDS THAT ARE LESS ONEROUS THAN W.M.A.T.A'S. MOREOVER, SEVERAL OF W.M.A.TA'S MEMBER JURISDICTIONS, INCLUDING THE DISTRICT OF COLUMBIA HAVE MORE FLEXIBLE BACKGROUND SCREENING POLICIES THAN W.M.A.TA. DOES. AND OTHER TRANSIT AUTHORITIES, SUCH AS CHICAGO TRANSIT AUTHORITY, HAVE POLICIES THAT AFFIRMATIVELY SEEK TO HIRE INDIVIDUALS WITH CRIMINAL RECORDS.

3.) W.M.AT.A'S POLICY IS NOT ONLY OVERLY HARSH, IT ALSO HAS A DISCRIMINATORY EFFECT ON QUALIFIED AFRICAN AMERICAN WORKERS. THE NUMBER OF AMERICANS WHO HAVE CRIMINAL RECORDS HAS INCREASED DRAMATICALLY IN RECENT DECADES HISTORICALLY AND AT PRESENT, AFRICAN AMERICANS HAVE BEEN HARDEST HIT BY THIS NATIONAL TREND BECAUSE OF RACIAL PROFILING AND OTHER DISCRIMINATORY POLICIES AND PRACTICES IN OUR CRIMINAL JUSTICE SYSTEM. FOR THIS REASON, AFRICAN AMERICANS IN THE ;

Washington, D.C. metropolitan area are more likely to have criminal convictions than members of other racial groups.  Racial disparities in rates of arrests and convictions are not explained by disproportionate rates of criminal activity.  A recent study revealed that, while rates of drug use in Washington, D.C. are roughly equal across all races, African Americans are arrested for drug offenses far more often than individuals of other races.  Accordingly, WMATA's use of criminal background checks unfairly and disproportionately limits opportunity for qualified African-American employees and applicants in violation of federal and local antidiscrimination laws. This lawsuit seeks equal opportunity for all who have been wrongly fired or denied employment because of WMATA's overbroad and unnecessarily punitive background screening policy.

### FACTUAL BACKGROUND

5.      WMATA was created in 1967 by an interstate compact between the District of Columbia, the State of Maryland, and the Commonwealth of Virginia to develop and operate a regional transportation system.  Through its network of Metrorail, Motorbus, and MetroAccess systems, it serves a population of approximately five million people in the District of Columbia; the Maryland counties of Montgomery and Prince Georges; the Virginia counties of Arlington, Fairfax, and Loudoun; and the Virginia cities of Alexandria, Fairfax, and Falls Church. WMATA operates the second-largest heavy rail transit system, the sixth-largest bus network, and the fifth-largest paratransit service in the United States.  WMATA serves a diverse population: of its bus passengers, 59% are African American, 19% white, 10% Latino, 4% Asian, 2% multi-racial, and 1% Native American.

6.      WMATA is a major employer in the greater Washington, D.C. metropolitan area. WMATA employs directly or through third-party contractors over 12,000 workers who drive and operate buses and trains; maintain and repair buses and trains; perform janitorial services at its

facilities and administrative offices; perform landscaping services at its facilities and administrative offices; perform track, equipment, and electrical repair; and perform training services. Positions at WMATA can provide a middle-class income and offer valuable training and promotional opportunities, including for workers without formal higher education.

7.      For more than 30 years, WMATA hired and promoted qualified employees, including some employees who had prior criminal convictions. For example, WMATA employed qualified formerly incarcerated individuals to assist them in re-entering society successfully through its contract with EPSI. Prior to 2009, WMATA disqualified job applicants from positions having direct contact with the public only if they had two felony convictions within three years, or three felony convictions within ten years for any crime against person, property, or society. *See* Metro News Release, "Metro implements stricter hiring standards" (attached as Exhibit A). Misdemeanor convictions were considered on a case-by-case basis, with consideration given to the nature of the offense, the time lapse since the offense, and efforts at rehabilitation.

8.      On August 19, 2009, WMATA announced a stricter policy ("2009 Policy") that disqualified a much broader class of job applicants. *See* WMATA Pre-Employment Background Check Standards (attached as Exhibit B). WMATA's 2009 Policy disqualified, among others: (i) all applicants, "except positions having direct contact with the public," who had a single felony conviction of any kind or two misdemeanor convictions for drug possession or a crime against person, property, or society within the last five years, (ii) all applicants for "positions having direct contact with the public" who had a single felony conviction of any kind or two misdemeanor convictions for drug possession or a crime against person, property, or society

within the last ten years, and (iii) all applicants who had a conviction for a "crime of violence," regardless of the time lapse since the offense.

9.     On December 22, 2011, WMATA expanded the policy to exclude an even broader class of workers.

10.     Specifically, on that date, WMATA promulgated a revised policy ("2011 Policy" or "WMATA's Criminal Background Check Policy") that applies to job applicants and to certain existing employees, including those who are under consideration for new positions with access to the general public or employees who have been on a non-work status, such as on medical leave, for 90 days or longer.  *See* WMATA Policy 7.2.3 Background Screenings (attached as Exhibit C).

11.     WMATA's 2011 Policy disqualifies from employment individuals with a far broader set of criminal convictions than the 2009 Policy.  Specifically:

(a)     The policy *permanently disqualifies* from employment *in any position* (regardless of whether the position requires interaction with the public) all individuals with a felony conviction for the sale or distribution of a controlled substance, no matter how long ago that conviction occurred;

(b)     The policy *permanently disqualifies* from employment *in any position* (regardless of whether the position requires interaction with the public) all individuals with any type of conviction (misdemeanor or felony) for possession of a weapon during the commission of a crime, no matter how long ago that conviction occurred;

(c)     The policy *permanently disqualifies* from employment *in any public-facing position, including bus operators and janitors,* all individuals with a felony conviction involving any violence no matter how long ago that conviction occurred;

7

(d)      The policy *disqualifies* from employment *in any position* all individuals with a single misdemeanor conviction in the last five years or felony conviction in the last ten years for property crimes, including vandalism, receiving stolen goods, theft, burglary, or larceny.[1]

12.      Existing employees of WMATA can be terminated as a result of a criminal background screening—even if they disclosed their criminal history when they applied to work for WMATA and they have had no new criminal convictions during their employment—if they seek a new position within WMATA or if they take leave from work for 90 days or longer.

13.      On its face, WMATA's Criminal Background Check Policy gives no consideration to individual circumstances, such as the specific conduct that led to the offense; whether the conviction resulted in probation, drug treatment, or community service; efforts at rehabilitation; or whether the conviction has been expunged.

14.      WMATA's Criminal Background Check Policy does not distinguish between positions with widely divergent job functions or responsibilities.  For example, the 2011 Policy uses the same list of disqualifying offenses for applicants for jobs ranging from station manager to bus operator to custodian.

15.      WMATA requires its contractors, including Diamond, EPSI, and First Transit, to utilize the 2011 Policy in hiring, promoting, and terminating employees.  At least 79 individuals have been disqualified pursuant to WMATA's Criminal Background Check Policy from jobs with WMATA contractors.

16.      WMATA's Criminal Background Check Policy is not only unfair and unnecessary, it also disproportionately excludes qualified African-American job applicants and

---

[1] The policy permanently disqualifies from employment in fiduciary positions individuals with a felony conviction for a property crime.

Classes has been substantially uniform.  Questions of law and fact will predominately be common to the Classes.

      40.      Defendants have acted in a manner generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

      41.      WMATA has adopted a single, uniform policy that is used for all employees and applicants to WMATA and its contractors.

      42.      There are questions of law and fact common to the Classes, and these questions predominate over any questions affecting only individual members.  Common questions include, but are not limited to:

      (a)      Whether Defendants' application of WMATA's Criminal Background Check Policy violates Title VII;

      (b)      Whether Defendants' application of WMATA's Criminal Background Check Policy violates the District of Columbia Human Rights Act;

      (c)      Whether Defendants maintain a single, uniformly applied criminal background check policy;

      (d)      Whether Defendants' application of WMATA's Criminal Background Check Policy deters or excludes applicants, or causes employees to be terminated based on a past criminal conviction, who are otherwise eligible for employment;

      (e)      Whether Defendants' application of WMATA's Criminal Background Check Policy to deter or exclude applicants, or terminate employees based on a past criminal conviction, has a disparate impact on African-American applicants and/or employees;

(f)     Whether Defendants' application of WMATA's Criminal Background Check Policy to deter or exclude applicants, or terminate employees based on a past criminal conviction, is job-related and consistent with business necessity;

(g)     Whether less discriminatory policies exist that would meet Defendants' legitimate business needs, if any; and

(h)     What equitable and injunctive relief for the Classes is warranted.

43.     Plaintiffs' claims are typical of the claims of the Classes: (1) each of the Plaintiffs either was terminated from employment or denied employment by Defendants; (2) each received or would have received a criminal background screening pursuant to WMATA's Criminal Background Check Policy; (3) each was terminated from employment, deterred from seeking employment, deterred from taking medical or personal leave, or denied employment based on a criminal conviction; and (4) each has the same discrimination claim based on disparate impact. All of these claims are shared by each and every Class member.

44.     Plaintiffs fairly and adequately represent and protect the interest of the members of the Classes. Plaintiffs have no conflict with one another or Class members. Plaintiffs are committed to the goal of having WMATA revise its hiring policy and practice to reduce or eliminate its discriminatory impact on African-American applicants and employees.

45.     Plaintiffs have retained counsel competent and experienced in complex class action employment discrimination litigation.

46.     This action is superior to any other method for the fair and efficient adjudication of this legal dispute. Defendants have acted and/or refused to act on grounds generally applicable to the Classes, making appropriate declaratory and injunctive relief with respect to

determination of employee honesty, reliability, or safety in that WMATA's Criminal Background Check Policy:

(a)     **Excludes workers on the basis of convictions that occurred in the distant past.** WMATA's Criminal Background Check Policy permanently disqualifies employees and job applicants with certain types of criminal convictions, such as distribution of a controlled substance, even if the worker has been drug-free and held a steady job for decades. For other types of convictions, WMATA's Criminal Background Check Policy disqualifies employees and job applicants with convictions within the last five or ten years—arbitrary cutoff dates that are not based on scientific or other evidence of whether the conviction is likely to predict worker wrongdoing. Although WMATA contends that its policy is necessary to combat employee fraud and wrongdoing, WMATA does not track—and has never tracked—how many instances of fraud, waste, abuse, criminal wrongdoing, accidents, or injuries have been caused by employees with a criminal record or whether such instances of misconduct are more or less frequently caused by employees with a criminal record as compared to other employees; and

(b)     **Excludes workers on the basis of convictions that are not sufficiently related to the duties of particular positions.** WMATA's Criminal Background Check Policy categorizes all positions at WMATA and its contractors as (1) positions involving access to the general public, (2) positions involving fiduciary duties, or (3) other positions. These categories are overly broad and insufficiently tailored to the actual job responsibilities expected of WMATA employees in particular positions. For example, positions involving "access to the general public" include bus operator, custodian, station manager, cleaner/shifter, and revenue collector. WMATA's Criminal Background Check Policy fails to distinguish between

convictions that could be linked to specific risks associated with each of these positions and convictions that are wholly unrelated to the job at issue.

96.     Nor does WMATA's Criminal Background Check Policy provide for an individualized assessment to determine that the particular employee or job applicant's criminal conviction is job-related, such that disqualifying the particular worker would be consistent with business necessity.

**B.      WMATA's Criminal Background Check Policy Has a Discriminatory Effect on African Americans**

97.     WMATA's Criminal Background Check Policy has a discriminatory effect on employment at Defendants WMATA, Diamond, EPSI, and First Transit.

98.     The number of Americans who have an arrest or conviction record has multiplied in recent decades, leading to an increase in the number of job applicants and workers who may be disqualified by criminal background checks.  An estimated 12 to 14 million Americans of working age are formerly incarcerated or have a felony conviction.[2]

99.     African Americans have been disproportionately affected by these national trends because of racial disparities in the criminal justice system.  Recent statistics from the FBI show that African Americans accounted for more than 3 million arrests in 2009 (28.3% of total arrests), even though they represented only 12.9% of the general population.[3]  One study found

---

[2] John Schmitt & Kris Warner, *Ex-offenders and the Labor Market* 2 (Ctr. for Econ. Policy & Research, Nov. 2010).

[3] Crime in the United States, 2009 U.S. Department of Justice—Federal Bureau of Investigation (Sept. 2010) tbl. 43, http://www2.fbi.gov/ucr/cius2009/arrests/index.html.

that in 2005, African Americans represented 14% of current drug users but constituted 33.9% of persons arrested for drug offenses.[4]

100.   WMATA's employees and job applicants come from the Washington, D.C. metropolitan area, including the District of Columbia and neighboring counties and cities in Maryland and Virginia.

101.   In the Washington, D.C. metropolitan area, a disproportionate number of persons arrested, convicted, and incarcerated are African American, compared to the demographics of the population.  According to information published by the D.C. Sentencing and Criminal Code Revision Commission ("Commission"), historically, on an annual basis, over 90% of the persons convicted of a crime in Washington, D.C. have been African American, despite constituting roughly 60% of the total population in the 1990s and 2000s.  For example, between 1993 and 1998, 95% of the individuals convicted were African American.  Of the 17,332 individuals convicted and sentenced during the 1993 to 1998 period, 15,331 were African American, 624 were white, and 193 were other races.[5]  Similarly, between 1996 and June 2002, African Americans represented 94.1% of criminal convictions.

102.   The data published by the Commission indicates that these historical trends of disproportionate convictions of African Americans continue to this day.  From 2009 to 2012, over 90% of the persons convicted of crimes in the District of Columbia were African American, despite African Americans constituting roughly 50% of the total population in 2010:

---

[4] Marc Mauer, Justice for All? *Challenging Racial Disparities in the Criminal Justice System*, Am. Bar Ass'n (2010).

[5] Information about race was missing from 1,193 cases.

| Year | Percentage |
|------|------------|
| 2009 | 96.2% |
| 2010 | 96.6% |
| 2011 | 95.3% |
| 2012 | 92.4% |

103.    African Americans in the Washington, D.C. metropolitan area are incarcerated at rates significantly higher than whites.  According to U.S. Census data, in each of the jurisdictions served by WMATA, a disproportionate number of persons detained in local jails in 2010 were African American compared to the demographics of the population:

| Jurisdiction | Percentage Black (Population) | Percentage Black (Detained) |
|--------------|-------------------------------|------------------------------|
| Washington, D.C. | 50.7% | 87.4% |
| Montgomery Cnty., Md. | 17.2% | 54.8% |
| Prince George's Cnty., Md. | 64.5% | 79.05% |
| Arlington Cnty., Va. | 8.5% | 57.17% |
| Fairfax Cnty., Va. | 9.2% | 38.11% |
| City of Alexandria, Va. | 21.8% | 52.75% |

104.    Based on data from the Bureau of Justice Statistics, African Americans are incarcerated at 19 times the rate of whites in the District of Columbia.  African Americans also experience disproportionate rates of incarceration in Maryland and Virginia (5.5 and 5.9 times

the rate of whites, respectively).[6]  Stated differently, African Americans are overrepresented in prisons and jails.  African Americans represent 68% of Maryland's incarcerated population but only 29% of the state's total population.  Similarly, African Americans constitute 58% of incarcerated individuals but only 19% of the total population in Virginia.[7]

105.    By barring individuals with certain types of convictions from employment, WMATA's Criminal Background Check Policy has had a disparate impact on African-American workers by precluding them from obtaining or retaining their employment with WMATA and its contractors, or by deterring them from seeking advancement opportunities or taking medical or personal leave.  Simply stated, more African Americans are precluded from obtaining employment or have otherwise experienced adverse employment action from WMATA's Criminal Background Check Policy more frequently than individuals of other races.

C.    **Less Restrictive Alternatives Are Available to Achieve WMATA's Legitimate Business Needs**

106.    There are a variety of less discriminatory alternatives that Defendants could adopt that would be fair and nondiscriminatory without compromising public safety.

107.    Less discriminatory alternatives include removing or limiting significantly the use of permanent disqualification based on certain criminal convictions; modifying the cutoff dates for certain criminal convictions based on available scientific or other evidence of whether the conviction is likely to predict future worker wrongdoing; limiting disqualification based on prior criminal convictions to convictions that are sufficiently related to the particular job at issue; and

---

[6] Marc Mauer & Ryan S. King, *Uneven Justice:  State Rates of Incarceration by Race and Ethnicity* 11 (Sentencing Project, July 2007).

[7] Prison Policy Initiative, 50 State Incarceration Profiles.

providing employees and applicants the opportunity to rebut presumptive disqualification by explaining why their criminal history is no longer relevant.

108.    Flexible background screening policies are workable.  WMATA previously utilized a more flexible background screening policy, and, despite its assertions that inflexible disqualifiers are necessary to combat worker fraud and wrongdoing, there is no data regarding employee misconduct that could support WMATA's adoption of more restrictive policies in 2009 and 2011.

109.    Several other local regional transportation organizations, including Arlington Transit, Annapolis Transit, Veolia Transportation, and Ride-On, utilize comparatively flexible background screening policies.  Plaintiffs include individuals who work or have worked for Ride-On in Montgomery County, MD, which does not permanently disqualify individuals from employment based on prior criminal convictions.

110.    The American Public Transportation Association recommends that transit authorities adopt the federal standard, developed for the Transportation Security Administration, which include narrower bases for disqualification than WMATA's Criminal Background Check Policy.  Likewise, the District of Columbia does not permanently disqualify individuals from employment based on prior criminal convictions except in limited circumstances, such as convictions involving violent sex crimes.

111.    Defendants have not adopted any of the less discriminatory alternatives described above despite knowledge of the adverse and unjust impact that WMATA's Criminal Background Check Policy has had, and continues to have, on workers.

112.    At a September 12, 2013, meeting of the WMATA Board of Directors, a number of employees who had been terminated from, or denied reinstatement to, positions at WMATA

because of criminal convictions that predated their employment with WMATA gathered to express their frustration about WMATA's Criminal Background Check Policy to the Board of Directors.  Following the meeting, those employees—together with current members of WMATA's workforce, members of WMATA's largest union, and other concerned community members—protested outside of WMATA headquarters to express their belief that WMATA's 2011 Policy is unfair and discriminatory.[8]  WMATA declined to revise its policy to address the concerns raised at the September 12, 2013 meeting and protest.

113.    On January 7, 2014, Councilmember Muriel Bowser introduced Proposed Resolution 20-619, "Sense of the Council on the Need for the Washington Metropolitan Area Transit Authority to Update its Personnel Policies to Encourage the Employment of Returning Citizens Resolution of 2014," which calls on WMATA to adopt a fair and nondiscriminatory background screening policy and to take affirmative steps to hire job applicants with prior criminal convictions.  On February 19, 2014, the Committee on Economic Development held a public roundtable at which several workers, union members, and other concerned community members testified, and many others attended, to support the adoption of Proposed Resolution 20-619.  On April 29, 2014, the Committee on Economic Development issued a Committee Report recommending approval of Proposed Resolution 20-619 by the full Council.  WMATA declined to revise its policy to address the concerns raised by Proposed Resolution 20-619, the public roundtable, and the committee report.

114.    In April 2012, the EEOC issued enforcement guidance on employers' consideration of arrest and conviction records when making employment decisions ("EEOC

---

[8] *See* Dana Hedgpeth, *Metro union workers protest*, Washington Post (Sept. 12, 2013).

Guidance" or "Guidance").[9]  In the Guidance, the EEOC discussed how employers' use of criminal history information can, in some instances, violate Title VII of the Civil Rights Act, explaining that policies that are facially race-neutral can result in disparate impact liability under Title VII if they disproportionately impact racial minorities (or other protected groups) and are not job-related and consistent with business necessity.

115.    The EEOC Guidance encourages employers who choose to rely on criminal background checks to consider three factors in order to ensure that their use of the checks is job-related and consistent with business necessity:  (1) the nature and seriousness of the offense, (2) the amount of time that has passed since the offense, and (3) whether the offense has any relationship to the job at issue.  The Guidance also recommends that employers give job applicants the opportunity to explain why they are qualified despite the past criminal offense.

116.    Alternatively, the EEOC recommends that employers validate their criminal records policies under the Uniform Guidelines on Employee Selection Procedures.

117.    Upon information and belief, WMATA has declined to revise its Criminal Background Check Policy in light of the EEOC Guidance.

---

[9] Equal Employment Opportunity Comm'n, *Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964,* as amended, 42 U.S.C. §§ 2000e *et seq.* (April 25, 2012).  The EEOC previously issued guidance on these matters in 1987 and 1990.  *See* Equal Employment Opportunity Comm'n, *Policy Statement on the Issue of Conviction Records under Title VII of the Civil Rights Act of 1964* (Feb. 4, 1987); Equal Employment Opportunity Comm'n, *Policy Statement on the Use of Statistics in Charges Involving the Exclusion of Individuals with Conviction Records from Employment* (July 29, 1987); Equal Employment Opportunity Comm'n, *Policy Guidance on the Consideration of Arrest Records in Employment Decisions under Title VII of the Civil Rights Act of 1964* (Sept. 7, 1990).

CLAIMS FOR RELIEF

COUNT 1: VIOLATIONS OF TITLE VII
OF THE CIVIL RIGHTS ACT OF 1964
42 U.S.C. §§ 2000e et seq

1.) PLAINTIFF BRINGS THIS CLAIM ON HIS OWN BEHALF

2.) DEFENDANTS POLICY AND PRACTICE OF USING A CRIMINAL BACKGROUND SCREENING POLICY THAT EXCLUDES FROM EMPLOYMENT PERSONS WITH IRRELEVANT AND DATED CONVICTION RECORDS HAS HARMED THE PLAINTIFF.

3.) A DECLARATORY JUDGEMENT THAT THE PRACTICES COMPLAINED OF HEREIN ARE UNLAWFUL AND VIOLATE TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED 42 U.S.C. 2000e et seq, THE FAIR CREDIT REPORTING ACT, AND THE D.C. HUMAN RIGHTS ACT OF 1977

4.) A PERMANENT INJUCTION AGAINST W.M.A.TA. AND ALL OFFICERS, AGENTS, SUCCESSORS, EMPLOYEES, REPRESENTATIVES, AND ALL PERSONS ACTING IN CONCERT WITH THEM, FROM ENGAGING IN THE UNLAWFUL POLICIES, PRACTICES, CUSTOMS, AND USAGES SET FORTH HEREIN.

5.) AN ORDER RESTORING THE PLAINTIFF TO HIS RIGHTFULL POSITION AS A GARAGE BUS MECHANIC/RAIL CAR MECHANIC "C" AND REQUIRING THAT APPLICANTS BE GIVEN PRIORITY CONSIDERATION FOR HIRE IN JOB VACANCIES IN THE POSITIONS FOR WHICH THEY ARE QUALIFIES

6.) AN ORDER FOR BACK PAY AND BENEFITS LOST BY THE PLAINTIFF.

7.) AN ORDER FOR COMPENSATORY DAMAGES FOR EMOTIONAL DISTRESS SUFFERED BY THE PLAINTIFF.

8.) An order for front pay for Plaintiffs and the Classes;

9.) An order for statutory, actual, and punitive damages;

10.) Costs incurred, including reasonable attorneys' fees to the extent allowable by law, including but not limited to 42 U.S.C. §§ 2000e-5(k) and 2000e-16 and 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

11.) Pre-judgment and post-judgment interest, as provided by law; and

12.) Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues raised in their complaint.

December 12, 2014

Dated:  Washington, D.C.

Respectfully submitted,

By: _Michael Christopher Derricote_

MICHAEL CHRISTOPHER DERRICOTES

9011 LAMBSKIN LANE

COLUMBIA, MARYLAND

21045

202 367-0858

41